UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| John Doe,<br><br>        Plaintiff,<br><br>   vs.<br><br>Hennepin County; Hennepin Healthcare System, Inc.; Laura Sloan, M.D., in her individual capacity; Minnesota Department of Health Commissioner Jodi Harpstead, in her official capacity; KyleeAnn Stevens, M.D., in her individual capacity; and Jane Doe 1, in her individual capacity,<br><br>        Defendants. | Case No. 24-cv-01392-NEB-DTS<br><br><br>**DHS DEFENDANTS'<br>MEMORANDUM OF LAW<br>IN SUPPORT OF<br>MOTION TO DISMISS<br>PLAINTIFF'S COMPLAINT** |

## INTRODUCTION

Plaintiff John Doe sued Commissioner Harpstead and Dr. KyleeAnn Stevens ("DHS Defendants") for doing what the Minnesota Legislature instructed them to do: admit patients to DHS treatment facilities once medically appropriate beds are available. Nowhere in Plaintiff's 75-page complaint is there any allegation that Commissioner Harpstead or Dr. Stevens acted contrary to these instructions from the Legislature. Instead, Plaintiff appears to sue DHS Defendants because he believes he has not received adequate psychiatric treatment *from Hennepin County*. But DHS does not, and cannot, control the conditions in Hennepin County's jail, nor can DHS control the medical care Hennepin County provides to those it incarcerates. Nor does it violate the law for DHS to admit

Plaintiff once a medically appropriate bed is available. The Court should dismiss DHS Defendants from this case.

## FACTUAL BACKGROUND

The issues Plaintiff raises in this lawsuit all stem from his civil commitment following a finding that he is incompetent to stand trial in a criminal proceeding. To provide the Court with the appropriate context for the present motion, DHS Defendants first offer a brief overview of Minnesota's statutory provisions governing civil commitment following a finding of incompetency, followed by a recital of facts relevant to this motion.

## I. STATUTORY BACKGROUND.

### A. The Criminal Proceeding.[1]

In Minnesota, once the criminal court[2] determines that reason exists to doubt the defendant's competency, "the [criminal] court must suspend the criminal proceedings." Minn. R. Crim. P. 20.01, subd. 3. For defendants charged with a felony or gross misdemeanor, the criminal court must order an examination of the defendant's mental condition and set a hearing on the defendant's competency. *Id.*, subd. 3(b). If, following this examination, the criminal court cannot conclude, by the greater weight of the evidence,

---

[1] This brief describes the statutory provisions in place at the time of Plaintiff's incompetency determination and subsequent civil commitment. Although it is written in the present tense for ease of understanding, in the months since Plaintiff's commitment a new statutory blueprint governing criminal competency to proceed effective in Minnesota on April 1, 2024. *See* Minn. Stat. §§ 611.40–.59. These provisions are not covered in this brief, however, as they are inapplicable to Plaintiff's claims.

[2] Because the criminal proceeding is separate from the civil commitment proceeding, DHS Defendants refer to the district court in the criminal matter as the "criminal court" and the district court in the civil commitment matter as the "commitment court."

that the defendant is competent, it must enter an order finding the defendant incompetent. *Id.*, subd. 5(c). The criminal proceeding remains suspended, and the criminal court must order the county where the criminal case was filed to determine whether the defendant should be civilly committed. *Id.* Although the proceeding is suspended, the criminal court retains authority over the case, including bail and conditions of release. *Id.*, subd. 3(c).

### B. The Civil Commitment Proceeding.

The civil commitment process is conducted separately from the criminal proceeding. Before the county can petition for civil commitment, it must first appoint a screening team to investigate whether civil commitment is appropriate. Minn. Stat. § 253B.07, subd. 1(a). If civil commitment is warranted, the county files a petition for commitment in the commitment court. *Id.*, subd. 2(a). Generally, individuals who are civilly committed following a finding of incompetency fall into one of three commitment categories: (1) a person who poses a risk of harm due to a mental illness, (2) a chemically dependent person, or (3) a person who has a mental illness and is dangerous to the public ("MI&D").[3] *See* Minn. Stat. § 253B.02, subds. 2, 17, 17a. Minnesota does not civilly commit individuals specifically for competency restoration under Chapter 253B.[4] *See generally* Minn. Stat. ch. 253B.

---

[3] As Plaintiff was civilly committed as MI&D, this brief focuses primarily on that specific type of commitment.

[4] Because Minnesota does not civilly commit individuals for competency restoration, there have been instances where a person was found incompetent to stand trial but did not meet the criteria for civil commitment.

A person against whom a civil commitment petition is filed has a right to counsel. Minn. Stat. § 253B.07, subd. 2c. A commitment hearing must be held within fourteen days of the petition, though that period can be extended for up to thirty days. *Id.* § 253B.08, subd. 1(a). If the commitment court determines by clear and convincing evidence that the proposed patient meets criteria for commitment as MI&D, the commitment court must commit the person to a secure treatment facility (or to a treatment facility or state-operated treatment program willing to accept the patient). *Id.* § 253B.18, subd. 1(a). A "secure treatment facility" means the Minnesota Security Hospital, which now does business as the Forensic Mental Health Program ("FMHP"). *Id.* § 253B.02, subd. 18a. Within 90 days of the initial commitment or admission (or as otherwise agreed to by the parties), the commitment court must hold a final determination hearing (unless waived by the parties). *Id.* § 253B.18, subds. 2(a), (b). If the commitment court finds the person continues to be a person who is MI&D, it must order that the person be committed for an indeterminate period. *Id.*, subd. 3. Once indeterminately committed, a person must go through the statutory reduction-in-custody process to be transferred out of a secure treatment facility, provisionally discharged, or discharged. *Id.*, subds. 4c(a), 5.

### C. The Priority Admission Statute.

Minnesota law requires the Commissioner to prioritize the admission of certain individuals who are ordered to be confined in, or civilly committed to, a state-operated treatment program, and who are residing in a jail or correctional institution. Minn. Stat. § 253B.10, subd. 1(b). Under this "priority admission" statute, these individuals must be admitted to a state-operated treatment program within forty-eight hours from the time DHS

determines a medically appropriate bed is available. *Id.*, subd. 1(e). This past Legislative session, the Minnesota Legislature further amended the Priority Admission statute, giving the Commissioner discretion to order priority admissions using a framework that accounts for a range of factors, including (but not limited to) the length of time the person has been waiting for admission, the intensity of the treatment needed, the person's safety and safety of others in the person's current environment, whether the person has access to necessary treatment, and negative impacts of an admission delay on the referring facility. Act of May 24, 2024, ch. 125, art. 4, § 5, 2024 Minn. Sess. Legis. Serv. ch. 125 (West).[5]

## II. PLAINTIFF'S CRIMINAL CHARGES, CIVIL COMMITMENT, AND PLACEMENT ON DHS'S PRIORITY ADMISSION WAITLIST.

### A. Plaintiff's Criminal Charges And Incompetency Finding.[6]

On June 14, 2023, Plaintiff was charged with one count of second-degree assault with a dangerous weapon, a felony. ECF No. 25-1. The complaint alleged that on June 12, 2023, Plaintiff stabbed his father in the back six times with a six-inch kitchen knife. *Id.* at 3. Plaintiff was taken into custody at the Hennepin County Adult Detention Center ("ADC") the day of the incident, and during his arraignment on June 15, 2023, the criminal court set bail at $50,000 with no conditions or $25,000 with conditions. ECF No. 25-2. The court ordered Plaintiff to undergo a psychological evaluation to determine Plaintiff's

---

[5] The Legislature also passed legislation permitting the Commissioner to add up to ten patients who have been civilly committed and are in a hospital setting to the priority admission waiting list. Act of May 24, 2024, ch. 125, art. 4, § 11, 2024 Minn. Sess. Legis. Serv. ch. 125 (West).

[6] The court may consider court filings on a motion to dismiss without converting it to a motion for summary judgment. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

competency to proceed. ECF No. 25-3. The court-appointed examiner supported a diagnosis of, among other things, bipolar I disorder, moderate – severe, with psychotic features. ECF No. 19-4 at 6. The examiner concluded Plaintiff was incompetent to proceed to trial. *Id.* at 8–9.

In an order dated July 26, 2023, the criminal court concluded Plaintiff was incompetent to stand trial; it suspended the criminal proceedings and ordered the Hennepin County Prepetition Screening Program to conduct a prepetition screening and issue a recommendation as to whether Plaintiff should be civilly committed. ECF No. 25-4 at 3-6. The order specified that if Plaintiff is committed, the "Hennepin County Sheriff shall transport the Defendant from the Hennepin County Adult Detention Center to the custody of the head of the facility named in the order for civil commitment when notified that placement is available for the Defendant." *Id.* at 4.

### B.    Plaintiff's Initial Commitment As MI&D.

On August 7, 2023, the Hennepin County Attorney's Office petitioned the commitment court to civilly commit Plaintiff as MI&D. ECF No. 25-5. On August 18, 2023, the district court ordered HCMC to "hold [Plaintiff] for observation, evaluation, diagnosis, care, treatment, and, if necessary, confinement." ECF No. 25-6 at 2. Although the commitment court extended this hold on August 22, ECF No. 25-7, Plaintiff was discharged back to ADC that same day. ECF No. 2 at 18.

Plaintiff's commitment trial began on December 7, 2023, and was continued to December 22, 2023, because "[t]he trial time was insufficient to conclude the proceeding." ECF No. 25-12. The trial concluded on December 22, at which time the parties agreed that

written closings would be submitted. In arguing against his civil commitment, Plaintiff informed the commitment court that outside of the June 2023 incident that led to his criminal charges, "there is not one other single incident of violence of aggression toward others reflected in [Plaintiff's] records." Resp't's Closing Arg. 6, *In re John Doe* (Jan. 2, 2024) (attached as Boese Decl. Ex. 1).[7] He further argued that "more recent evaluations by HCMC psychologist Dr. Sloan record that [Plaintiff] has been stable for months, is voluntarily taking his medication, is involved in discussing which anti-psychotic medication will be most helpful to maintain his mental health, and has no symptoms of psychosis." *Id.* Notably, Plaintiff stated that they "key" to his "stability and mental health is to remain medication compliant," and that "[c]ommitment to the Minnesota Security Hospital is not necessary to ensure [Plaintiff's] medication compliance." *Id.* at 9.

On January 8, 2024, the district court ordered Plaintiff committed as MI&D. ECF No. 19. The court committed Plaintiff to the head of FMHP, ordered the head of FMHP to report to the criminal division of the district court when Plaintiff regains competence, and instructed that the head of FMHP "shall not permit [Plaintiff's] release, institutional transfer, partial institutionalization status, termination, discharge, or provisional discharge of the civil commitment until further Order of the Hennepin County District Court – Criminal Division." *Id.* at 13.

---

[7] Because Plaintiff is proceeding by pseudonym, DHS Defendants are omitting the civil commitment case number so as to not identify Plaintiff.

### C.  No Medically Appropriate Bed Is Available For Plaintiff.

DHS's treatment facilities are operating at capacity, and accordingly they are unable to immediately admit patients who are civilly committed to DHS. *See, e.g.*, ECF No. 18-1, at 24, 27.[8] "[D]espite the extensive and successful efforts by [DHS] to streamline processes, efficiently utilize existing resources, and expand treatment options," there is insufficient capacity in DHS's treatment programs. *Id.* at 27. DHS therefore administers a waiting list for patients who are ordered committed to state-operated treatment programs. *See generally id.*

### D.  Plaintiff's Indeterminate Commitment As MI&D.

On March 7, 2024, Dr. Jennifer L. Harrison filed a 60-day treatment report to the commitment court, wherein she concluded that Plaintiff remained in need of civil commitment. ECF No. 19-1 at 33. The parties agreed to schedule a hearing on Plaintiff's indeterminate commitment for May 1, 2024. ECF No. 25-14 at 2. On May 3, 2024, the commitment court ordered Plaintiff be indeterminately committed as a person who is mentally ill and dangerous to the public. ECF No. 25-16 at 5.

### E.  Hennepin County Petitioned For A *Jarvis* Order.

On February 23, 2024, Plaintiff's treatment team at the Hennepin County jail filed a *Jarvis* petition.[9] *See* ECF No. 25-17 at 2. A hearing on the petition was set for March 8,

---

[8] The Court may consider this Task Force Report in deciding the Commissioner's report, as it is embraced by Plaintiff's complaint (ECF No. 2 at 61). *Zean*, 858 F.3d at 526 (stating that courts may consider "matters incorporated by reference" in the complaint when deciding a Rule 12 motion).

[9] A petition to authorize the involuntary administration of neuroleptic medication under the Minnesota Commitment and Treatment Act is known as a *Jarvis* petition. Minnesota law

2024, but Plaintiff agreed to continue the hearing for two weeks "so that [Plaintiff's] medical provider has the opportunity to appear and participate in the hearing." *Id.* On March 25, 2024, following the March 22 *Jarvis* hearing, the court issued an order authorizing the use of neuroleptic medication. ECF No. 25-18.

## III. THE PRESENT MOTION.

The Commissioner (sued only in her official capacity) and Dr. Stevens (sued only in her individual capacity) now move to dismiss all Counts against them in this matter (Counts I, III, V, VI, VII, VIII, and XI).

## STANDARD OF REVIEW

Rule 12(b)(6) eliminates actions that are fatally flawed in their legal premises, "streamlin[ing] litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989). In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party. *Brotherhood of Maint. of Way Emp. v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001). However, to avoid dismissal, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 680–81 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Importantly, the Court is "not required to divine the litigant's

---

requires court approval before a treatment team can administer neuroleptic medication to a non-consenting, not competent individual. Minn. Stat. § 253B.092; *Jarvis v. Levine*, 418 N.W.2d 139 (Minn. 1988).

intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021).

A plaintiff bringing claims under 42 U.S.C. § 1983 "must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). That being said, "[c]onstitutional claims brought under 42 U.S.C. § 1983 are discrete claims and as such should not be pled in a shotgun manner." *Benson v. Piper*, No. 17-CV-266, 2019 WL 2017319, at *9 n.4 (D. Minn. Jan. 25, 2019), *report and recommendation adopted*, 2019 WL 1307883 (D. Minn. Mar. 22, 2019). Pleading constitutional claims without particularity "unfairly burden[s] defendants and courts by shift[ing] onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." *Id.* (internal quotation marks omitted).

## ARGUMENT

Plaintiff's claims are premised on three fundamental flaws: (1) Plaintiff was never in the custody of DHS and accordingly DHS Defendants could not control his conditions of confinement or be deliberately indifferent to his medical care, (2) Plaintiff was not civilly committed for competency restoration, and (3) Plaintiff does not have a constitutional right to treatment for the illness for which he was committed. Due to these deficiencies, Plaintiff's claims against DHS Defendants must be dismissed. But even if the Court believed that Plaintiff's allegations were plausible to state a claim against DHS,

at a minimum Dr. Stevens is entitled to qualified immunity because none of the purported constitutional violations are clearly established, and the allegations demonstrate that the decision to admit Plaintiff when a medically appropriate bed was available was consistent with Minnesota law.

## I. PLAINTIFF'S CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED.

### A. Plaintiff Failed To State Claims For Deliberate Indifference Against DHS Defendants (Counts I, III, VI) Because He Was Never In DHS's Custody And His Allegations Do Not Rise To The Level Required To State A Claim.

Counts I, III, and VI all allege that DHS Defendants were deliberately indifferent to Plaintiff's medical needs.[10] These claims should be dismissed because (1) Plaintiff was never in DHS's custody, and (2) the allegations do not rise to the high level required to state a claim for deliberate indifference.

#### 1. Plaintiff Was Never In DHS's Custody.

Plaintiff's Complaint indicates that he was in the physical custody of Hennepin County at all times relevant to this case. This is fatal to his deliberate indifference claims because without physical custody, DHS does not owe Plaintiff any constitutional obligation to provide him with medical care. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) (holding that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent

---

[10] Although Count VI is stylized as a claim for "inadequate medical care" under the Due Process Clause, *see* Doc. 2 at 67–68, the Eighth Circuit has been clear that any claim for "inadequate medical care" is subject to the deliberate indifference analysis. *Karsjens v. Lourey*, 988 F.3d 1047, 1051–52 (8th Cir. 2021). Accordingly, Count VI is essentially duplicative of Count I.

to help him, but from the limitation which it has imposed on his freedom to act on his own behalf," and that only when "the State takes a person into its custody and holds him there against his will" does "the Constitution impose[] upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *Briggs v. Okla. ex rel. Okla. Dep't of Human Servs.*, 472 F. Supp. 2d 1304, 1313 (W.D. Okla. 2007) ("In the absence of *both* legal *and* physical custody, no special relationship exists, and thus, no attendant affirmative duty to protect exists." (emphasis added)).

Under Minnesota law, a person is not under the Commissioner's custody and control until he arrives at a state-operated treatment program. Minn. Stat. § 253B.10, subd. 1(c). Nor does Minnesota law give the Commissioner any authority to tell Hennepin County how to manage its jail, or how to respond to any health concerns of individuals detained in the jail; Minnesota vests this authority with the county sheriff. Minn. Stat. § 387.11. Indeed, DHS never asked that Plaintiff be held in jail pending his admission; his detention is the result of both the criminal court and the commitment court ordering his detention.[11] ECF Nos. 25-3, 25-4, 25-7. Nor does Plaintiff's complaint contain any allegation that DHS requires individuals civilly committed as MI&D following a finding of incompetency to remain in jail pending their admission to a DHS treatment facility.

Because Plaintiff has not been in the physical custody of the Commissioner at any time relevant to this lawsuit, his deliberate indifference claim should be dismissed.

---

[11] If Plaintiff believes that either detention order is unlawful, nothing prevents him from seek relief through a habeas petition or by requesting that the criminal court or commitment court lift the detention orders.

### 2. The Allegations Cannot Support A Claim That DHS Defendants Were Deliberately Indifferent To Plaintiff's Needs.

Even if DHS Defendants could theoretically be held liable on a deliberate indifference theory despite the absence of physical custody, Plaintiff's claim should be dismissed because the allegations do not meet the deliberate indifference standard.

Where "a [civilly committed] patient's Fourteenth Amendment claim is for constitutionally deficient medical care," courts "apply the deliberate indifference standard from the Eighth Amendment." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015); *Senty-Haugen v. Goodno*, 462 F.3d 876, 889–90 (8th Cir. 2006). "To demonstrate the 'deliberate indifference' necessary to sufficiently plead an Eighth Amendment violation, a plaintiff must demonstrate (1) that he had an objectively severe medical need, and (2) that [the defendant] knew of, but deliberately disregarded that need." *Sorenson v. Minn. Dep't of Human Servs.*, No. 14-cv-4193, 2015 WL 251720, at *11 (D. Minn. Jan. 20, 2015). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008).

A plaintiff "must demonstrate 'more than negligence, more even than gross negligence.'" *Sorenson*, 2015 WL 251720, at *11 (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). The deliberate indifference standard "is a difficult standard to meet," as the disregard for a known, objectively serious medical need "must rise to the level of criminal recklessness." *Jones*, 512 F.3d at 481; *Sorenson*,

2015 WL 251720, at *11 ("Deliberate indifference is akin to criminal recklessness."). Failure to treat a medical condition does not constitute punishment under the Eighth Amendment unless the defendant knew that the plaintiff's medical condition "created an excessive risk" and then failed to act on that knowledge. *Sorenson*, 2015 WL 251720, at *11 (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (same). "As long as this threshold is not crossed, [civilly committed persons] have no constitutional right to receive a particular or requested course of treatment, and . . . doctors remain free to exercise their independent medical judgment." *Sorenson*, 2015 WL 251720, at *11 (quoting *Dulany*, 132 F.3d at 1239). Only those "involved in, or directly responsible for," providing medical care can be liable for failure to treat. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), *as amended* (Mar. 4, 2016). Further, "[m]erely demonstrating that a [] doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065–66 (8th Cir. 2014).

With respect to Dr. Stevens (sued in her individual capacity only), Plaintiff alleges no facts that she was ever his treating physician. Nor could he, as a committed individual is not under the custody or control of DHS until his admission to a DHS treatment facility. Minn. Stat. § 253B.10, subd. 1(c) ("After arrival, the patient shall be under the control and custody of the head of the facility or program."). Any purportedly deficient medical care was that of Hennepin County, not of Dr. Stevens.[12] Dr. Stevens cannot be held liable for

---

[12] To be clear, DHS Defendants are not suggesting that Hennepin County provided inadequate medical care.

the actions of Plaintiff's actual treatment professionals. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694–95 (1978) (observing that there is no respondeat superior or vicarious liability in § 1983 claims); *Hackenmueller v. Fadden*, 196 F. Supp. 3d 992, 999–1000 (D. Minn. 2016) (observing that intervening acts can break the chain of causation).

At best, Plaintiff alleges that Dr. Stevens did not admit him immediately upon his commitment. But this action by itself simply cannot meet the "criminal recklessness" standard. She was not indifferent to Plaintiff; she did what Minnesota law told her to do: admit Plaintiff to a DHS treatment facility within forty-eight hours of a medically appropriate bed becoming available. Her actions were therefore the opposite of criminally reckless.

The same can be said of Commissioner Harpstead (sued in her official capacity only). A suit against the Commissioner, in her official capacity, is in effect a suit against the governmental entity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). For a governmental entity to be held liable under section 1983, the entity itself must be a "moving force" behind the deprivation. *Id.* at 166. Accordingly, the entity's "'policy or custom' must have played a part in the violation of federal law." *Id.*; *see also Burlison v. Springfield Pub. Sch.*, 708 F.3d 1034, 1041 (8th Cir. 2013) (plaintiff must show "a constitutional violation was committed pursuant to an official policy or custom and that such policy [or] custom was the moving force behind plaintiff's injury" (internal quotation marks omitted)). Any alleged "policy or custom" that resulted in Plaintiff having to wait for a medically appropriate bed was not out of "criminally reckless" behavior toward

Plaintiff, but rather DHS following Minnesota law and managing its admissions within the capacity of its treatment facilities.

In any event, Plaintiff's own statements and Hennepin County's actions demonstrate that Plaintiff was not at an "excessive risk" of harm following his civil commitment.[13] At the time of his commitment, Plaintiff admitted to the commitment court that he had "been stable for months," had no symptoms of psychosis, and was voluntarily taking his medication. Boese Decl. Ex. 1, at 6. Plaintiff stated he only required medication to remain stable, and that he did not require commitment to a DHS treatment facility. *Id.* at 9. Plaintiff's argument here is irreconcilable with his argument to the commitment court and may be ignored. *See Hilgers v. Argent Mortg. Co.*, No. 13-cv-56, 2013 WL 3992446, at *1, *2 (D. Minn. Aug. 5, 2013) (rejecting allegations belied by text of contract and observing that on a Rule 12 motion, the court need not accept as true conclusory allegations and may consider matters of public record in deciding a motion to dismiss).

Moreover, although it appears Plaintiff stopped taking his medication in February 2024, his treatment team at the jail immediately filed a *Jarvis* petition to authorize administration of the medication despite the refusal, which was granted. Accordingly, Plaintiff's belief that there was an "excessive risk" of harm to him simply cannot be squared with Hennepin County seeking authorization to provide psychiatric treatment—the exact treatment Plaintiff told the commitment court was "key" to his stability. Boese Decl. Ex. 1,

---

[13] Although Plaintiff has been detained in jail since June 2023, he was not civilly committed to the Commissioner until January 8, 2024. ECF No. 2, ¶ 87. Plaintiff provides no authority in his Complaint suggesting that DHS or its employees could be liable for Plaintiff's treatment *before* he was committed.

at 9. Plaintiff's complaint contains no allegations that he suffered such deficient medical care such that his medical providers were *deliberately* indifferent to his needs; rather, it shows the opposite.[14]

### B.     Plaintiff's Pretrial Punishment Claim (Count VII) Should Be Dismissed.

Conditions of confinement claims brought by civilly committed persons in the Eighth Circuit are evaluated under the *Bell v. Wolfish*, 441 U.S. 520 (1979) standard, namely whether the challenged condition "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Karsjens v. Lourey*, 988 F.3d at 1052–53 (quoting *Bell*, 441 U.S. at 538). A detainee may show either: (1) that the challenged conditions were intentionally punitive; or (2) that "the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). Accordingly, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539.

Here, Plaintiff's claim should be dismissed because (1) his allegations are more appropriately    analyzed    as    a    deliberate-indifference    claim    and    not    a

---

[14] Indeed, the County has an independent constitutional obligation to provide adequate medical care to Plaintiff. *See West v. Atkins*, 487 U.S. 42, 54 (1988) ("[T]he State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated."); *Dadd v. Anoka Cnty.*, 827 F.3d 749, 756 (8th Cir. 2016) ("It is clear that a pretrial detainee has a constitutional right to adequate medical care while in custody."). Given this independent duty, the Commissioner can hardly be liable under a deliberate indifference theory.

conditions-of-confinement claim, (2) detention in jail while civilly committed does not alone establish punitive conditions, and (3) any alleged delayed admission to a state-operated treatment facility is reasonably related to a legitimate government purpose.

### 1. Plaintiff Does Not State A Conditions-Of-Confinement Claim.

As to the DHS Defendants, Plaintiff does not challenge any particular condition of the Hennepin County jail as punitive. Rather, his challenge is to the alleged lack of mental healthcare provided during his detention. But as discussed above, such a claim is analyzed under the deliberate indifference standard, not the *Bell* standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006) (deliberate indifference standard applies where claim is "not based on a pretrial detainee's right to be free from punishment but [rather] grounded in principles of safety and general well-being"); *Goldsmith v. Heffner*, No. 1:21-CV-00136-SRC, 2022 WL 503723, at *6 (E.D. Mo. Feb. 18, 2022) (following *Butler* to apply deliberate indifference to dismiss punitive conditions claims based on medical treatment allegations).

Moreover, under either the deliberate-indifference or *Bell* standard, Plaintiff does not state a claim because, as previously stated, the Commissioner does not have physical custody of Plaintiff and is therefore not legally responsible for his conditions. *See DeShaney*, 489 U.S. at 199–200; *Briggs*, 472 F. Supp. 2d at 1313; *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (requiring personal involvement to state a section 1983 claim). Like his deliberate-indifference claim, any claim for unconstitutionally punitive conditions of confinement would be against Hennepin County, not DHS.

### 2. Detention In Jail While Waiting For A Medically Appropriate Bed Does Not Establish Punitive Conditions.

Even if DHS's lack of physical custody was not a complete defense to Plaintiff's punitive-conditions claim, it nevertheless informs the scope of Plaintiff's claim. Because DHS cannot control the actual conditions of Plaintiff's confinement at the Hennepin County jail, Plaintiff must believe the fact he is detained in jail at all while waiting for a medically appropriate bed, following his civil commitment, is unconstitutionally punitive. This theory, however, is inconsistent with Eighth Circuit and Supreme Court precedent.

It is well established that pretrial detention is not unconstitutional. *U.S. v. Salerno*, 481 U.S. 739, 751 (1987) (pretrial detention does not "offen[d] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."). Indeed, as Judge Tostrud recently observed when dismissing a nearly identical claim in a similar lawsuit, the fact that a treatment facility may provide a better location for treatment than a jail "does not plausibly show that jail conditions encountered by [Plaintiff] or civilly committed persons generally either lack any reasonable relationship to a legitimate government purport or are excessive in relation to such purpose." *Dalen v. Harpstead*, No. 23-cv-1877, 2024 WL 169109, at *9 (D. Minn. Jan. 16, 2024). The *Dalen* court further noted that accepting a theory like the one put forth by Plaintiff "would necessitate holding that every civilly committed person jailed on criminal charges is, by virtue of their civilly committed status, subject to punitive conditions." *Id.*

This theory also makes little sense given his indeterminate commitment. Regardless of whether Plaintiff regains competency, Plaintiff will remain under civil commitment; he

cannot be discharged from his commitment without going through the statutory reduction-in-custody process before the Special Review Board. *See* Minn. Stat. §§ 253B.18, subd. 4(c), .19. And the Eighth Circuit and this District have held that civilly committed individuals do not have a constitutional right to reside in the least restrictive environment. *See Karsjens v. Harpstead*, No. 11-cv-3659, 2022 WL 542467, at *13 (D. Minn. Feb. 23, 2022) (holding that civilly committed individuals "do not have a right to the least restrictive environment" (citing *Beaulieu v. Ludeman*, 690 F.3d 1017, 1032 (8th Cir. 2012)).

If detention in jail following civil commitment is not categorically punitive—a point Plaintiff admitted in prior briefing, *see* ECF No. 35, at 19—Plaintiff's "punitive conditions" must be premised on a belief that Plaintiff has a right to receive treatment to treat the mental illness that triggered his commitment. But that is not the law in this Circuit. As the Eighth Circuit explained in *Strutton v. Meade*, "Although the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, it has not recognized a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement." 668 F.3d 549, 557 (8th Cir. 2012) (quoting *Elizabeth M. v. Montenez*, 458 F.3d 779, 788 (8th Cir. 2006)); *see also Karsjens v. Piper*, 845 F.3d 394, 410 (8th Cir. 2017); *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021); *Bailey v. Gardebring*, 940 F.2d 1150, 1153 (8th Cir. 1991) ("We turn first to Bailey's asserted right to treatment. . . [he] simply does not have the constitutional right he claims."); *Elizabeth M.*, 458 F.3d at 788 (rejecting a claim of a "due process right to appropriate or effective or reasonable treatment of the

illness or disability that triggered the patient's involuntary confinement"); *Kansas v. Hendricks*, 521 U.S. 346, 366 (1997) ("[W]e have never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available.").

The court in *Strutton* acknowledged that although some circuits recognized a right to treatment, the Eighth Circuit has not. *Id.* ("[S]ome circuits have adopted a rule that the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released. We have not adopted such an approach."). Rather, any "right" to treatment generally comes from state law, and the court observed that it remained "cautious not to turn every alleged state law violation into a constitutional claim." *Id.*

Accordingly, Plaintiff's "punitive conditions" claim cannot state a claim because detention following a civil commitment order is not unconstitutional, and Plaintiff does not have a constitutional right to receive treatment of the mental illness that caused his commitment. Count VII must be dismissed.

### 3. Maintaining A Waiting List For Individuals Civilly Committed To The Commissioner's Care Is Reasonably Related To A Legitimate Government Interest.

Even if the Court put aside these deficiencies, Count VII should nevertheless be dismissed because maintaining a waiting list is reasonably related to a legitimate government interest.

Because DHS Defendants do not control the conditions at the Hennepin County jail, the only conceivable "condition" that DHS Defendants could be subjecting Plaintiff to is DHS's placement of Plaintiff on a waiting list for admission to FMHP. But Plaintiff's

Complaint and the documents it incorporates by reference demonstrate that this action is reasonably related to multiple legitimate governmental purposes. For example, waiting to admit Plaintiff until a medically appropriate bed is available ensures that DHS can provide effective and safe mental health treatment not just to Plaintiff, but also to the other patients at FMHP, by keeping patient ratios at levels that will adequately protect both staff and patients. ECF No. 18-1 at 18 (discussing how overcrowding treatment facilities leads to increased injuries). It also ensures that DHS's facilities and doctors remain in compliance with federal and state regulations. *Id.* at 19 ("When the agency's psychiatric hospitals are full, DHS cannot admit new patients until there are open beds appropriate for their conditions and an appropriate level of staffing to care for them safely, as demanded by federal and state regulations as well as ethical medical practice.").

DHS's need to use a waiting list, and to place Plaintiff on this waiting list, is reasonably related to these purposes. FMHP does not have infinite beds. As discussed in the Task Force Report, many factors out of the control of DHS have led to the situation in which the State finds itself, such as the rate of commitments outpacing the number of treatment beds available, the lack of community placements available for patients who no longer require inpatient mental health treatment, staffing shortages, and lack of appropriations from the Legislature to increase capacity. *Id.* at 26–28. In short, the waitlist is DHS's way of managing the scarce resources that it has in the best way possible.

Finding similar issues to the ones facing DHS, the District of Kansas recently denied a preliminary injunction to pretrial detainees who were found incompetent to stand trial and were awaiting admission to a state treatment program. *See Glendening v. Howard*,

– F. Supp. 3d –, 2023 WL 8715814 (D. Kan. Dec. 18, 2023). The court concluded that the state hospital's waitlist was reasonably related to a legitimate government interest in providing adequate care to patients under its care:

> State hospitals lack infinite capacity. Sometimes, a detainee must wait. The State has a continued interest in evaluating and restoring the competency of each detainee so that he or she may be tried. The State has a further interest in providing adequate care at [the state hospital] to accomplish that purpose, which obliges detainees to wait in line until services are available. Detainees must wait for inpatient services because numerous pressures outside of [the state agency's] direct control have simultaneously increased demand for treatment and created staffing shortages. [The state agency] addresses these issues with a waitlist. Although the waitlist is long, is not indefinite. It reflects [the state agency's] effort to manage the numerous external factors affecting admission rates at [the state hospital].

*Id.* at *11.

DHS Defendants anticipate that Plaintiff will cite to a handful of cases for the proposition that the state does not have a legitimate government interest in keeping incompetent criminal defendants in jail because doing so is incompatible with restoring their competency to stand trial. Plaintiff, however, was not civilly committed for the purpose of regaining his competency to stand trial; rather, he was civilly committed because, based on his mental illness, he "presents a clear danger to the safety of others," and "there is a substantial likelihood that [he] will engage in acts capable of inflicting serious physical harm on another." *See* Minn. Stat. § 253B.02, subd. 17 (defining a "person who has a mental illness and is dangerous to the public"). His civil commitment is therefore independent from his competency to stand trial. *See* Minn. Stat. § 253B.18, subds. 7, 15 (identifying the standards for Plaintiff to be provisionally discharged or

discharged from his commitment, none of which are whether he regains competency to stand trial).

This distinction is important because the cases on which Plaintiff relies generally stem from *Jackson v. Indiana*, which held that when a criminal defendant "is committed *solely* on account of his incapacity to proceed to trial," he "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." 406 U.S. 715, 738 (1972) (emphasis added). But because Plaintiff is not committed "solely" on account of his incapacity to proceed to trial, *Jackson*'s holding is inapposite, as are the cases that rely on that decision.

Moreover, *Jackson* does not forbid all pretrial detention; it only forbids *irrational* pretrial detention. *Id.* at 738. Accordingly, even if *Jackson* applied, the question for this Court is whether DHS's actions (i.e., maintaining a waiting list for admission to FMHP) is reasonably related to its asserted interest in providing safe and appropriate mental health treatment to Plaintiff and the other civilly committed individuals at FMHP. As discussed above, it plainly is, and Plaintiff's Complaint fails to allege any facts showing that DHS's waitlist is not reasonably related to these legitimate government interests.

### C. Plaintiff's Claim For Unconstitutional Bodily Restraint (Count VIII) Should Be Dismissed.

Pretrial detainees and the civilly committed have a protected liberty interest to be free from bodily restraint not imposed in accordance with professional judgment. *Youngberg v. Romeo*, 457 U.S. 307, 319, (1982). This professional judgment standard

applies only to "actual physical restraints" like shackles, wrist irons, a "restriction table," and tight binding of an epileptic patient with a blanket. *Montin v. Gibson*, 718 F.3d 752, 754-55 (8th Cir. 2013); *see also Strutton v. Meade*, 668 F.3d 549, 558 (8th Cir. 2012) (holding that because appellant was "not physically restrained . . . *Youngberg*'s 'professional judgment' standard is again inapplicable"); *Soc'y for Good Will to Retarded Child., Inc. v. Cuomo*, 737 F.2d 1239, 1247 (2d Cir. 1984) (recognizing that under *Youngberg*, "involuntary commitment by itself is not undue bodily restraint").

While Plaintiff purports to sue "[a]ll Defendants" for this claim, his allegations are specific to Hennepin County jail officials placing him in solitary confinement. *See* ECF No. 2 at 69–70. Plaintiff alleges no facts identifying either Defendant Harpstead's or Stevens's personal involvement in the decision to place him in solitary confinement. *See generally id.* Nor could he, as Minnesota law is clear that the county sheriff controls the operation of the county jail. Minn. Stat. § 387.11. Because there is no vicarious liability for claims brought pursuant to section 1983, Plaintiff's failure to allege any personal involvement by DHS Defendants is fatal to his claim. *Monell*, 436 U.S. at 694–95 (holding no respondeat superior or vicarious liability in § 1983 claims); *Beck*, 257 F.3d at 766 (requiring personal involvement to state a section 1983 claim).

Further, Plaintiff's complaint makes no allegation that DHS Defendants ever applied physical bodily restraints to him. Rather, his allegations relate to the conditions of his confinement, which relate to Count VII, addressed above. Because *Youngberg*'s professional judgment standard does not apply to the claims he raises in Count VIII, the claim should be dismissed.

**D.      Plaintiff Failed To State A Procedural Due Process Claim (Count V).**

To prove a violation of procedural due process, a plaintiff must show the following elements: (1) a protected life, liberty, or property interest; (2) the deprivation of the same; and (3) the state's failure to provide adequate procedural rights before impinging upon the protected interest. *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). Procedural due process does not protect a plaintiff from an alleged substantive deprivation (i.e., not admitting Plaintiff to a state-operated treatment program); rather, it protects a plaintiff from the denial of procedures allowing the person to contest the basis for the deprivation of the protected interest. *Carey v. Piphus*, 435 U.S. 247, 259–60 (1978).

Here, Plaintiff does not seek any procedural due process protections. Nowhere in his 75-page complaint does he articulate the basis for his procedural due process claim. In fact, the entirety of his allegations specific to procedural due process consist of two paragraphs that state nothing more than labels and conclusions:

> 258.   Based on the above factual allegations, State Defendants, through their actions, arising under the color of state law, violated Plaintiff's constitutional right to procedural due process under the Fourteenth Amendment.

> 259.   As a result of this due process violation, Plaintiff suffered physical, psychological, and emotional injury and has been damaged.

ECF No. 2 at 67. But as stated above, a complaint must allege more than labels and conclusions or the elements of a cause of action to survive a motion to dismiss. *Iqbal,* 556 U.S. at 680–81.

Notably absent from Plaintiff's Prayer for Relief (or anywhere in his Complaint) is any mention of procedures that he believes DHS should implement. *See* ECF No. 2 at 74

(identifying the only injunctive relief sought as enjoining Defendants from detaining Plaintiff at the Hennepin County jail). "A plaintiff who seeks only to stop a challenged practice entirely, rather than to be afforded procedural protections in connection with that practice, does not have a procedural due process claim." *Hough v. Shakopee Pub. Sch.*, 608 F. Supp. 2d 1087, 1112 (D. Minn. 2009); *see also Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures."). Because Plaintiff alleges no procedural deprivation, his procedural due process claim must be dismissed.

**E.     At a Minimum, Dr. Stevens Is Entitled To Qualified Immunity On Plaintiff's Constitutional Claims.**

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It protects officials by providing "ample room for mistaken judgments," but does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). Courts consider two factors: "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).

As the Supreme Court has reiterated, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). It "should not be defined at a high level of generality." *Id.* "Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* To deny qualified immunity to a public official, the court must "identify a case where an officer acting under similar circumstances" was found to have violated the Constitution. *Id.* Plaintiff must show that no reasonable official would have done the act in order to defeat a claim of qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (requiring the constitutional question to be "beyond debate"). "[Q]ualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *White*, 137 S. Ct. at 551 (internal quotations omitted).

Here, the facts as alleged do not demonstrate that Dr. Stevens violated the Constitution. But even if the Court concluded the alleged facts established a violation, that violation was not clearly established at the time of Dr. Stevens' alleged actions. As discussed in detail above, the facts alleged show that Dr. Stevens was implementing Minnesota law that instructed her to admit Plaintiff to a DHS treatment facility once there was a medically appropriate bed available for him. Indeed, this statute was amended in 2022 to make clear that Dr. Stevens was not required to admit individuals like Plaintiff until a medically appropriate bed was available. That statute has not been found unconstitutional, and Dr. Stevens had every reason to believe that the Legislature would not pass a statute that was unconstitutional. *See* Minn. Stat. § 645.17(3) (stating that when

enacting statutes, "the legislature does not intend to violate the Constitution of the United States or of [Minnesota]").

DHS Defendants are aware of no binding caselaw from the Supreme Court holding that *not* admitting Plaintiff to a treatment facility, under the particularized facts of this case, was punitive, an act of deliberate indifference, or an unconstitutional bodily restraint in violation of the Fourteenth Amendment.[15] To the contrary, Judge Tostrud recently dismissed similar constitutional claims in the *Chairse* and *Dalen* litigation. *Chairse v. Minn. Dep't of Human Servs.*, No. 23-CV-355, 2023 WL 5984251 (D. Minn. Sept. 14, 2023);[16] *Dalen v. Harpstead*, No. 23-CV-1877, 2024 WL 169109 (D. Minn. Jan. 16, 2024).

## II.   PLAINTIFF FAILED TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Because Plaintiff's federal claims against DHS Defendants should be dismissed, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim. *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). But even if it did, Plaintiff's state-law claim for negligent infliction of emotional distress should be dismissed because DHS Defendants are entitled to immunity and the allegations fail to state a plausible claim.

---

[15] As discussed, *Jackson* cannot be the authority, because the detained individual in that case was committed solely on account of the finding he was not competent to stand trial.

[16] While Judge Tostrud did not dismiss a procedural due process claim in *Chairse*, that claim is inapposite to the present case, as it was premised on the prior version of the Priority Admission statute itself violating procedural due process. *Chairse*, 2023 WL 5984251, at *4. Here, Plaintiff has been clear he is not seeking to invalidate the Priority Admission statute. ECF No. 34 at 7.

## A.     DHS Defendants Are Entitled To Immunity.

Plaintiff's negligence claim stems from his belief that DHS "fail[ed] to promptly transfer Plaintiff to a treatment facility after his civil commitment order issued" and that it failed "to provide Plaintiff with mental health treatment while his civil commitment proceeding was pending and after his civil commitment order issued."  ECF No. 2 at 72. Minnesota law, however, accords DHS Defendants with immunity for these alleged actions.

The Minnesota Commitment and Treatment Act provides immunity from civil liability to any person who acts in accordance with Minnesota Statutes chapter 253B:

> All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual, pursuant to this chapter, are not subject to any civil or criminal liability under this chapter.

Minn. Stat. § 253B.23, subd. 4.  At the time Plaintiff was civilly committed, Minnesota law required DHS to admit a person who is civilly committed and residing in jail "within 48 hours of the Office of Medical Director . . . determining that a medically appropriate bed is available."  Minn. Stat. § 253B.10, subd. 1(e) (2023).  Accordingly, there was no duty under Minnesota law to admit Plaintiff to a DHS facility immediately "after his civil commitment order issued."  Plaintiff makes no allegation in his Complaint that the DHS Medical Director had determined a medically appropriate bed was available for him such that the time for his admission would begin to run.

Plaintiff also cites no legal authority for his claim that DHS had some statutory obligation to provide mental health services to him before he was actually committed (i.e.,

while his civil commitment proceeding was pending). Nor does he cite any authority for his belief that DHS had a statutory obligation to provide him with services after the commitment order issued but before he was admitted. This lack of authority is unsurprising given that Chapter 253B explicitly states that a patient is not under the control of the Commissioner until he is admitted. Minn. Stat. § 253B.10, subd. 1(c).

Given that Plaintiff Complaint does not allege facts showing DHS Defendants acted in bad faith under Minnesota law, DHS Defendants are entitled to immunity from Plaintiff's negligence claim.

**B.    Even If DHS Defendants Were Not Entitled To Immunity, The Claim Should Nevertheless Be Dismissed.**

In Minnesota, "[t]o establish a claim for negligent infliction of emotional distress, a plaintiff must show that she was within a zone of danger of physical impact, reasonably feared for her safety, and suffered emotional distress with accompanying physical manifestations." *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 408 (Minn. 1998). To be within the "zone of danger," the plaintiff "must show that the defendants placed her within a zone of danger of physical impact, prompting reasonable safety concerns and causing severe emotional distress and resultant physical injury." *Stead-Bowers v. Langley*, 636 N.W.2d 334, 343 (Minn. Ct. App. 2001). "The zone of danger requirement may be replaced by an intentional tort such as defamation or another willful, wanton, or malicious act." *Oslin v. State*, 543 N.W.2d 408, 418 (Minn. Ct. App. 1996). "In all cases, a plaintiff must demonstrate physical manifestations of the severe

emotional distress." *Leiendecker v. Asian Women United of Minn.*, 834 N.W.2d 741, 754-55 (Minn. Ct. App. 2013), *rev'd on other grounds by* 848 N.W.2d 224 (Minn. 2014).

Here, Plaintiff alleges no facts that the traditional "zone of danger" element is relevant, as Plaintiff makes no claim he was in the zone of danger of a physical impact. Nor has he alleged sufficient facts to show that any replacement to the "zone of danger" element can be met. There is no allegation that either DHS Defendant committed an intentional tort on Plaintiff, nor is there any allegation of willful, wanton, or malicious conduct. As discussed above, the allegations all demonstrate that DHS Defendants were following Minnesota law.

Plaintiff also fails to allege sufficient facts to meet the physical-manifestation requirement for emotional distress, as there are no facts alleged showing his emotional distress was accompanied by physical manifestations of this distress. These deficiencies provide additional support for the Court dismissing Count XI against DHS Defendants.

## CONCLUSION

Based on the foregoing, DHS Defendants' motion to dismiss should be granted in its entirety.

Dated: July 26, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Brandon Boese**
BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1414 (Voice)
(651) 282-5832 (Fax)
brandon.boese@ag.state.mn.us
scott.ikeda@ag.state.mn.us

*Attorney For Defendants Jodi Harpstead,*
*In Her Official Capacity, And Dr. KyleeAnn*
*Stevens, In Her Individual Capacity*

|#5835295-v1