# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN DOE, | Case No. 24-CV-1392 (NEB/DTS) |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR PRELIMINARY INJUNCTION |
| HENNEPIN COUNTY, HENNEPIN HEALTHCARE SYSTEM, INC., JODI HARPSTEAD, in her official capacity, LAURA SLOAN, in her individual capacity, KYLEEANN STEVENS, in her individual capacity, and JANE DOE 1, in her individual capacity, | |
| Defendants. | |

After plaintiff John Doe was found incompetent to stand trial, he was civilly committed to the state to receive mental health treatment. The state, however, does not have capacity to admit Doe into a treatment facility. As a result, Doe has sat in jail for more than six months waiting for treatment.

Doe sued the county and several state officials, alleging that his confinement in jail violates his constitutional rights. He now moves for a preliminary injunction ordering Defendants Jodi Harpstead, Laura Sloan, KyleeAnn Stevens, and Jane Doe 1[1] to admit

---

[1] Doe's motion for a preliminary injunction seeks relief against the state Defendants (Jodi Harpstead, Laura Sloan, KyleeAnn Stevens, and Jane Doe 1), but not the county

him into a state treatment facility. (ECF No. 15.) For the reasons below, Doe's motion for a preliminary injunction is granted.

## BACKGROUND

Doe has bipolar and schizoaffective disorder. (ECF No. 1 ("Compl.") ¶ 17; ECF No. 19-4 at 6 (under seal).) In June 2023, he was arrested after allegedly assaulting his father during a mental health crisis. (*Id.* ¶ 18.) A state-court judge determined that Doe was incompetent to stand trial and suspended his criminal case. (*Id.* ¶ 19); *see* Minn. R. Crim. P. 20.01.

In January 2024, Doe was civilly committed to the state so that he could receive mental health treatment. (Compl. ¶¶ 19, 87; ECF No. 19 at 13–14.) The commitment order directed the state to hold Doe "safe and secure for the period of commitment" because he was "in need of a treatment plan with close supervision by mental health professionals and sufficient safety measures to protect himself and others." (Compl. ¶ 87; ECF No. 19 at 9, 13.) The next day, the state responded to the commitment order and requested information about Doe's mental illness. (ECF No 19-5.)

The state did not admit Doe into a treatment facility. Instead, Doe remained in solitary confinement for the next four months. (Compl. ¶ 94.) Doe's mental health deteriorated. He exhibited "psychosis and delusional behavior." (*Id.* ¶ 160.) He was

---

Defendants (Hennepin County and Hennepin Healthcare). For purposes of this order, the Court refers to the state Defendants as "Defendants."

severely dehydrated and malnourished, at times appearing "too weak to even speak." (*Id.*) His cell was covered with "garbage" and "piles of vomit" and "smeared with unknown substances." (*Id.* ¶ 159.) During one breakdown, he flooded his cell with raw sewage. (ECF No. 19-2 at 224.)

In April 2024, Doe sued the county, Hennepin Healthcare, and several state officials. He argued that his confinement in jail as a civilly committed person was unconstitutional. A few days later, the jail moved Doe out of solitary confinement and into the general population. (ECF No. 19-2 at 175–76 (noting Doe's initial placement in "ASM" or solitary confinement on June 13, 2023), 221 (noting Doe was "reclassed" out of solitary confinement on April 22, 2024). Doe remains in jail while he awaits treatment for his mental illness.

## ANALYSIS

In determining whether to issue a preliminary injunction, the Court must consider (1) the probability of success on the merits of Doe's claims; (2) the threat of irreparable harm to Doe; (3) the balance between that threat of harm and the injury that granting injunctive relief would inflict on other interested parties; and (4) whether the injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.

1981). No single factor is determinative, and all factors must be viewed in totality when deciding whether relief should be granted. *Id.*

I. **Probability of Success on the Merits**

The Court first examines whether Doe meets the "most significant" *Dataphase* factor: likelihood of success of on the merits. *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992). Ordinarily, a plaintiff need only show a "fair chance of prevailing." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (citation omitted). But when the plaintiff "seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme," the plaintiff must show a "likelihood that he will succeed on the merits of his claim." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008) (citation omitted).

Defendants contend that the heightened likelihood-of-success standard applies because Doe's motion seeks "to enjoin the implementation of a duly enacted state statute." *Id.* at 732. The motion makes no such challenge. It seeks only an order directing the state to admit Doe into a treatment facility. The statute prohibits *denying* a patient admission when a medically appropriate bed is available; it does not prohibit *admitting* a patient before a medically appropriate bed is available. *See* Minn. Stat. § 253B.10, subdiv. 1(e). Because "[n]othing in this action calls into question the validity of the underlying

statute," Doe need only show a fair chance of succeeding on the merits. *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 1000 (8th Cir. 2019).

Having established the appropriate standard, the Court next considers whether Doe has shown a fair chance of success on the merits his claims based on deliberate indifference and punitive conditions.

A.      *Deliberate Indifference*

Doe alleges that Defendants provided him constitutionally deficient medical care by refusing to admit him into a state treatment facility. To begin with, Defendants argue that the state was not constitutionally obligated to provide him care because Doe was not in its physical custody. This is so, Defendants contend, because a state's constitutional duty to provide adequate medical care arises when it "takes a person into its custody and holds him there against his will." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). But that is exactly the point: the state was *ordered* to take custody of Doe, and it did not. In doing so, it defied a state-court order: a state-court judge "committed" Doe to a state treatment facility and ordered the state to "hold" him "safe and secure" during the "period of commitment." (ECF No. 19 at 13.) The state therefore assumed responsibility for Doe. By refusing to admit Doe, it effectively held Doe in jail against his will. The state cannot skirt its constitutional duties by delegating physical custody of a committed individual to another entity. *See Terry ex rel. Terry v. Hill*, 232 F. Supp. 2d 934, 944 (E.D. Ark. 2002) (applying deliberate indifference test to state's failure

5

to promptly transfer mentally ill individuals from jail to state hospital). At a minimum, Doe has a fair chance of establishing state action.[2] *See Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1122 (9th Cir. 2003) (affirming district court's order granting injunction against state facility for failure to promptly transfer mentally ill individuals from jail to state hospital). The Court thus turns to the specific elements of his deliberate indifference claim.

To succeed on a deliberate indifference claim, Doe must show (1) that he had an objectively severe medical need and (2) the state deliberately disregarded that need. *Scott v. Benson*, 742 F.3d 335, 339–340 (8th Cir. 2014). A medical need is objectively serious if it either has been "diagnosed by a physician as requiring treatment" or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 340 (citation omitted). Doe has been diagnosed with bipolar disorder and schizoaffective disorder and prescribed medication to treat both illnesses. (ECF No. 19-4 at 6 (diagnosing Doe with "bipolar I disorder, moderate – severe, with psychotic features"); ECF No. 19-3 at 110 (observing that Doe's symptoms of "psychosis [a]nd mania" are "most consistent with Schizoaffective Disorder").) Thus, Doe's medical illness is a serious medical need.

---

[2] Even if *DeShaney* required a showing of physical custody, it would not foreclose Doe's constitutional claims. *DeShaney* addressed whether the state's failure to protect an individual against "private violence" violated the Due Process Clause. 489 U.S. at 197. This case does not involve "private violence," but the state's confinement of civilly committed individuals in jail. *Ward v. Hellerstedt*, No. A-16-CV-917-LY, 2017 WL 1611761, at *3 (W.D. Tex. Apr. 28, 2017), *report and recommendation adopted sub nom. Ward ex rel. Bourliot v. Hellerstedt*, No. A-16-CV-917-LY, 2017 WL 5202874 (W.D. Tex. June 14, 2017).

*Gunther v. Castineta*, 561 F. App'x 497, 502 (6th Cir. 2014) (alleged schizophrenia and paranoia are "serious medical need[s]").

Defendants argues that Doe's alleged mental illness is not objectively serious because he apparently no longer suffers any "urgent" or "immediate" needs. (ECF No. 23 at 27 (under seal).) But several physicians diagnosed Doe's mental illnesses, so he need not show that an ordinary person would recognize the seriousness of his illness. In any event, jail and medical records suggest that a layperson would likely consider such mental illness to be one obviously requiring treatment.

Defendants also deliberately disregarded Doe's objectively serious medical needs. As discussed, in January 2024, Doe was committed to the state. (ECF No. 19 at 13.) In the commitment order, the judge noted that Doe had been diagnosed with bipolar and schizoaffective disorder. (*Id.* at 3–4.) DHS responded a day later, sending a letter to the court discussing the commitment order and requesting information about Doe's mental illness. (ECF No 19-5.) Defendants thus knew that Doe had objectively serious medical needs. For the next six months, they disregarded those needs by refusing to admit him into a state treatment facility. *See Terry*, 232 F. Supp. at 944 (finding state acted deliberately indifferent in failing to promptly transfer mentally ill individuals from jail to state hospital). And it makes no difference that the state's indifference was allegedly because of budget constraints: "lack of funding does not excuse unconstitutional conditions of confinement." *C.P.X. through S.P.X. v. Garcia*, 450 F. Supp. 3d 854, 907 (S.D. Iowa 2020)

(citing *Finney v. Ark. Bd. of Corr.*, 505 F.2d 194, 201 (8th Cir. 1974)). Thus, Doe has a fair chance of prevailing on his deliberate indifference claim.[3]

### B. Punitive Conditions

Doe also alleges that the conditions of his confinement in jail are unconstitutionally punitive. Conditions of confinement for a civilly committed individual violate due process if they amount to punishment of the individual. *Karsjens v. Lourey*, 988 F.3d 1047, 1053 (8th Cir. 2021). In determining whether a condition of confinement is punitive, the Court must "decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

Defendants argue that Doe's conditions-of-confinement claim fails because it does not challenge the "nature" or "duration" of his confinement but the status of his confinement—as a civilly committed individual. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see Dalen v. Harpstead*, No. 23-CV-1877 (ECT/ECW), 2024 WL 169109, at *9 (D. Minn. Jan. 16, 2024) (rejecting argument that "every civilly committed person jailed on

---

[3] Defendants also argue that the state was not deliberately indifferent because Hennepin Healthcare obtained a *Jarvis* order. (ECF No. 23 at 10–11.) The order allows it to give Doe neuroleptic medication without his consent. *See* Minn. Stat. § 253B.092; *Jarvis v. Levine*, 418 N.W.2d 139 (Minn. 1988). Even if Hennepin Healthcare's conduct could be attributed to the state, it does not undercut Doe's deliberate indifference claim. The *Jarvis* order merely ensures that Doe will continue to receive neuroleptic medication. It by no means is the beginning *and* end of treatment: as one state psychologist observed, Doe "remains in need of further care and treatment." (ECF No. 19-1 at 33.)

criminal charges is, by virtue of their civilly committed status, subject to punitive confinement conditions"). But Doe does not argue that his conditions of confinement are punitive because of his civilly committed status; he argues that his conditions of confinement are punitive because he has been confined in jail for six months and denied mental health treatment.

And those conditions lack a reasonable relation to the purpose of his confinement—providing mental health treatment, restoring competency, and protecting the community. *Jones. v. United States*, 463 U.S. 354, 368 (1983). Besides anti-psychotic medication, Doe has received no mental health treatment in jail. By keeping Doe in jail, the state does nothing to treat his mental illness or restore his competency. Indeed, the state is "undermining these goals by holding incompetent defendants in jail for months without providing them adequate treatment." *Disability L. Ctr. v. Utah*, 180 F. Supp. 3d 998, 1012 (D. Utah 2016).

Defendants' main contention appears to be that Doe's confinement protects the community because he is a danger to the public. Perhaps, if Doe were receiving mental health treatment in jail, that would be the case. But Doe's condition has only worsened since being confined in jail. (*See* compl. ¶¶ 159–60.) And his continued confinement in jail makes him a greater threat to the community. The Court also sees no reason why an individual committed for public safety reasons should receive fewer constitutional protections than an individual committed for competency restoration. *See Foucha v.*

*Louisiana*, 504 U.S. 71, 78–79 (1992) (applying *Jackson* to insanity acquittee committed solely because he represented a danger to society). Because Doe "was not convicted, he may not be punished." *Id.* at 80. The state therefore lacks a punitive interest in his confinement.

Because Doe has shown a fair chance of prevailing on both his deliberate indifference and punitive conditions claims, the first *Dataphase* factor favors injunctive relief.

**II.     Irreparable Harm**

Irreparable harm occurs when a party has "no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). A threat to a constitutional right does not automatically constitute irreparable harm. The movant must show not only a constitutional violation but that the irreparable harm is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All- Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (citation omitted).

Doe argues that he will suffer irreparable harm from Defendants' refusal to commit him. This is so, according to Doe, because his mental illness "continues to go untreated" in jail, harming him "physically and constitutionally." (ECF No. 16 at 9 (under seal).) But Doe does not explain what makes this harm irreparable. He claims that his "untreated florid psychosis . . . may have caused permanent psychological injury." (*Id.*)

The Court tends to agree, though there has been no evidence—and little argument—presented on this factor. The Court thus weighs it as neutral.

### III. Balance of Harms

Under the third *Dataphase* factor, "a court should flexibly weigh the case's particular circumstances to determine whether . . . justice requires the court to intervene to preserve the status quo." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (citation omitted). Doe's harm is significant: he has languished in jail for more than six months when he should have been in a treatment facility. As a result, his mental health has deteriorated, and he has become severely dehydrated and malnourished. Doe's harm is balanced by the state's interest in managing its budget. The state chose to allocate some of its funds to its treatment facilities. In this case, those funds are not enough to admit every individual who needs treatment. That decision is the state's prerogative, but it cannot change the Constitution or steer the Court against relief.

Considering Doe's severe mental illness, exacerbated by his confinement in jail, along with the potential constitutional infirmity, the Court finds that third *Dataphase* factor favors Doe and injunctive relief.

### IV. Public Interest

Finally, the Court must determine whether injunctive relief is in the public interest. The public has an interest in ensuring that mentally ill individuals do not face unconstitutional conditions of confinement or be denied treatment. *See Garcia*, 450 F.

Supp. 3d at 923 (recognizing public interest in ensuring mentally ill juveniles did not face unconstitutional confinement or denied treatment). A preliminary injunction will help protect mentally ill individuals confined in jail awaiting treatment and thus promote the public interest. The fourth *Dataphase* factor favors injunctive relief.

**V.     Conclusion**

Given Doe's likelihood of success on the merits and the strong public policy for protecting mentally ill individuals, the Court determines that Doe's motion for a preliminary injunction is granted.

**CONCLUSION**

Based on the foregoing and on all the files, records, and proceedings herein, Plaintiff John Doe's Motion for Preliminary Injunction (ECF No. 15) is GRANTED as follows:

> Defendants Commissioner Jodi Harpstead, in her official capacity, Laura Sloan, KyleeAnn Stevens, and the individual(s) responsible for placement and admission of Plaintiff into the Minnesota Department of Human Services Forensic Mental Health Program, including, but not limited to, Jane Doe 1, shall admit Plaintiff into the Forensic Mental Health Program, in St. Peter,

Minnesota, within 72 hours of the issuance of this Order.

Dated: July 30, 2024

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge