# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN DOE, | Case No. 24-CV-1392 (NEB/DTS) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO STAY ORDER FOR PRELIMINARY INJUNCTION |
| HENNEPIN COUNTY, HENNEPIN HEALTHCARE SYSTEM, INC., LAURA SLOAN, in her individual capacity, JODI HARPSTEAD, in her official capacity, KYLEE ANN STEVENS, in her individual capacity, and JANE DOE 1, in her individual capacity, | |
| Defendants. | |

This matter is before the Court on Defendants' motion to stay the Court's preliminary injunction pending appeal. For the reasons below, Defendants' motion (ECF No. 53) is denied.

## BACKGROUND

Doe has bipolar and schizoaffective disorder. (ECF No. 1 ("Compl.") ¶ 17 (under seal).) In June 2023, he was arrested after allegedly assaulting his father during a mental health crisis. (*Id.* ¶ 18; *see* ECF No. 25-1 (under seal).) A state-court judge determined that he was incompetent to stand trial and suspended his criminal case. (Compl. ¶ 19); *see* Minn. R. Crim. P. 20.01, subdiv. 3.

In January 2024, a state-court judge ordered that Doe be committed to the state so he could receive mental health treatment. (Compl. ¶¶ 19, 87; ECF No. 19 at 13 (under seal).) During Doe's commitment, the state was to hold Doe "safe and secure." (Compl. ¶ 87; ECF No. 19 at 13.) The state did not admit Doe into a treatment facility. Instead, Doe remained in solitary confinement in jail for the next four months. (Compl. ¶ 94.)

In April 2024, Doe sued the county, Hennepin Healthcare, and several state officials, arguing that his confinement in jail was unconstitutional. (Compl.) About a month later, Doe moved for a preliminary injunction against Defendants Jodi Harpstead, KyleeAnn Stevens, and Jane Doe 1[1] admit him into the state treatment facility. (ECF No. 15.) The Court granted the motion, ordering Doe's entry into a treatment facility instead of the jail where he is still housed. (ECF No. 51.)

Defendants now move to stay the preliminary injunction pending appeal. (ECF No. 53.)

---

[1] Doe's motion for a preliminary injunction sought relief against the state Defendants (Jodi Harpstead, KyleeAnn Stevens, and Jane Doe 1), but not the county Defendants (Hennepin County, Hennepin Healthcare, and Laura Sloan). For purposes of this order, the Court refers to the state Defendants as "Defendants."

**ANALYSIS**

I.   **Legal Standard**

In determining whether to stay an order pending appeal, the Court considers four factors: (1) whether the movant has made a strong showing of likelihood of success on the merits; (2) whether the movant will be irreparably injured without a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). As the party seeking a stay, Defendants bear the burden of establishing its propriety. *See Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir. 1994). Because a "stay is an intrusion into the ordinary processes of administrative and judicial review," it is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). It is instead "an exercise of judicial discretion," and the propriety of its issue depends on "the circumstances of the particular case." *Id.* (citation omitted).

II.   **Likelihood of Success on the Merits**

The Court begins with the most important factor: Defendants' likelihood of success on the merits. *Brady*, 640 F.3d at 789. They argue that they are likely to succeed on appeal for two main reasons: (1) Doe's constitutional claims lack merit; and (2) Doe failed to show irreparable harm.

## A. Constitutional Claims

Defendants first argue that they are likely to prevail on appeal because Doe does not have a constitutional right to receive mental health treatment. (ECF No. 55 at 6–7.) Although some circuits have recognized a civilly committed individual's right to treatment, Defendants emphasize that the Eighth Circuit has not. (*Id.* at 7 (citing *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) ("[S]ome circuits have adopted a rule that the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released. We have not adopted such an approach.").)

The Court's order was not premised on a civilly committed individual's constitutional right to mental treatment. (ECF No. 55 at 6.) It was instead based on two well-established constitutional claims: (1) deliberate indifference to an objectively serious medical need and (2) punitive conditions of confinement. (ECF No. 51 at 5–10.) That the Eighth Circuit "has not recognized a broader due process right" of a civilly committed individual to reasonable treatment is beside the point. *Strutton*, 668 at 557 (8th Cir. 2012).

Perhaps realizing this, Defendants argue that Doe failed to make a fair showing of success on the merits of his deliberate indifference and punitive-conditions claims. A deliberate indifference claim requires a showing that (1) the plaintiff had an objectively

4

severe medical need and (2) the defendant deliberately disregarded that need. *Scott v. Benson*, 742 F.3d 335, 339–340 (8th Cir. 2014).

There can be little argument about Doe's objectively serious medical need. He was diagnosed by a physician as requiring treatment for his mental illness. *Id.* at 340 (citation omitted); (ECF No. 19-4 at 6 (under seal); ECF No. 19-3 at 110 under seal).)

And as set forth in this Court's order, Doe has a fair chance of prevailing on the claim that Defendants deliberately disregarded that need when they refused to admit Doe into a treatment facility. A state-court judge committed Doe in January 2024. (ECF No. 19 at 13.) In the commitment order, the judge noted that Doe had been diagnosed with bipolar and schizoaffective disorder. (*Id.* at 3–4.) Defendant DHS responded a day later, sending a letter to the court discussing the commitment order and requesting information about Doe's mental illness. (ECF No 19-5 (under seal).) Defendants thus knew that Doe had an objectively serious medical need. And they have continued to refuse to admit him into a treatment facility. *See Terry*, 232 F. Supp. at 944 (finding state acted deliberately indifferent in failing to promptly transfer mentally ill individuals from jail to state hospital).

Defendants argue that the Court "ignore[d]" the "extremely high legal standard" to prevail on this claim, which is "criminal recklessness." (ECF No. 55 at 10 (citing *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008)).) Their argument goes as follows: State law requires Defendants to admit Doe into the treatment facility once a medically

5

appropriate bed becomes available. *See* Minn. Stat. § 253B.10, subdiv. 1(e). Because no such bed was available, Defendants did not violate state law, and so their conduct "cannot amount to criminal recklessness." (ECF No. 55 at 11.) Whether Defendants complied with state law is not the standard, however: the critical issue is whether Defendants violated the federal constitution. *Scott*, 742 F.3d at 339–340.

Defendants also stress that Doe has received antipsychotic medication while in jail. (ECF No. 55 at 11.) But medication is only part of Doe's needed treatment. (*See* ECF No. 19-1 at 33 (under seal).) And he has received no other treatment while in jail. The jail setting appears to be inherently contra-therapeutic and exacerbates mental illness. (*See* ECF No. 2-1 at 6 (noting that the "chaotic and anti-therapeutic environment of the jail setting . . . cause many individuals with pre-existing" mental illnesses to "experience psychiatric decompensation").)

In addition, conditions of confinement for a civilly-committed individual violate due process if they amount to punishment of the individual. *Karsjens v. Lourey*, 988 F.3d 1047, 1053 (8th Cir. 2021). Defendants contend that the Court applied its punitive-conditions analysis to the wrong condition—being held in jail—since Doe is in jail because of a criminal charge and state-court detention order. (ECF No. 55 at 8.)

Defendants claim that the only condition they imposed on Doe was his placement on a waitlist for admission to a treatment facility. (*Id.*)

The Court is unpersuaded. The state was ordered to take custody of Doe, and it did not. In doing so, it violated a state-court order that "committed" Doe to a state treatment facility and ordered the state to "hold" him "safe and secure" during the "period of commitment." (ECF No. 19 at 13.) Thus, by refusing to admit Doe, the state effectively held Doe in jail for months against his will. Courts have recognized punitive conditions claims against state officials even though the defendant was not in the state's physical custody. *E.g.*, *Disability L. Ctr. v. Utah*, 180 F. Supp. 3d 998, 1012 (D. Utah 2016) (finding punitive-conditions claim plausible where state held "incompetent defendants in jail for months without providing them adequate treatment"); *see also Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1122 (9th Cir. 2003) ("Holding incapacitated criminal defendants in jail for weeks or months violates their due process rights . . . .").

At bottom, Defendants' reasons for their likelihood of success on appeal "are nothing more than a reiteration of the objections and arguments already considered" by this Court in its preliminary injunction order. *Knutson v. AG Processing, Inc.*, 302 F. Supp.

2d 1023, 1036 (N.D. Iowa 2004). They have therefore failed to show a likelihood of success on the merits of Doe's constitutional claims.

### B. Doe's Irreparable Injury

Defendants next argues that, even if Doe has a fair chance of prevailing on the merits, he failed to show irreparable harm in the absence of an injunction. Because the failure to show irreparable harm is an "independently sufficient basis upon which to deny a preliminary injunction," Defendants contend that they are likely to succeed on appeal. *Sessler v. City of Davenport, Iowa*, 990 F.3d 1150, 1156 (8th Cir. 2021) (citation omitted). They rely on the Court's statement about a lack of evidence and argument presented on this factor. (*See* ECF No. 51 at 11 ("[T]here has been no evidence—and little argument presented on this factor.").) But the Court noted that it "tend[ed] to agree" that Doe's "untreated florid psychosis . . . may have caused permanent psychological injury." (*Id.* at 10–11 (citation omitted).) Thus, the Court concluded that it considered the factor "neutral." (*Id.* at 11.)

Defendants also emphasize that Doe has received anti-psychotic medication for his mental health and, as a result, his condition has improved in jail. (ECF No. 55 at 5–6.) But Doe's condition has deteriorated while in jail. (*See* ECF No. 19-1 at 21, 29, 32; ECF No. 19-2 at 224 (under seal).) And the state's own psychologist opined that Doe needs a wholistic mental health treatment plan; medication is not enough. (ECF No. 19 at 9, 13.)

8

Because Doe's irreparable harm is evident, Defendants have failed to show a likelihood of success on this factor.

### III. Irreparable Injury

Defendants must also show that the harm they face is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996), *motion to vacate stay denied*, 519 U.S. 978 (1996).

Defendants argue that denying the stay would irreparably harm the state's "ability to run" the treatment facility "according to its statutory directives." (ECF No. 55 at 12.) They rely on Minnesota Statute Section 253B.20, which governs the state's responsibility in discharging patients in state treatment programs. Although they do not flush it out, the Court reads their argument as follows: Without a stay, the state must admit Doe before a medically appropriate bed is available. Because the state's treatment facility is full, they might be forced to discharge a current patient before it is safe to do so. *See* Minn. Stat. § 253B.20, subdiv. 4.

The Court's injunction requires only that Defendants do what they have already been ordered to do by the state court: admit Doe to the appropriate treatment facility. Although Defendants have discretion in running the treatment facility, they do not have discretion to ignore state-court commitment orders. Defendants have not shown that they would suffer irreparable harm without a stay.

## IV. Balance of the Equities

Defendants contend that the preliminary injunction could harm other inmates because Doe will move "to the front of the waiting list, potentially delaying" admission of other who have waited longer or who have more serious medical needs. (ECF No. 55 at 13.) The Court's preliminary injunction applies only to Doe. (*See* ECF No. 51 at 12–13.) Thus, the potential harm caused by requiring the state to admit one more individual is "minimal." *Rud v. Johnston*, No. CV 23-0486 (JRT/LIB), 2023 WL 2760533, at *2 (D. Minn. Apr. 3, 2023) (denying motion to stay because injunction applied to one civilly committed sex offender).

On the other hand, granting a stay would harm Doe. Doe's mental health has deteriorated in jail. Besides medication, he has received no treatment in jail even though he has lived there for over a year. Jail conditions are also harmful to the mentally ill. (*See* ECF No. 1-1 (under seal).) And his ongoing confinement potentially violates his constitutional rights. For all these reasons, staying the injunction will impose further harm on Doe.

## V. Public Interest

It is in the public interest to ensure that mentally ill individuals do not face unconstitutional conditions of confinement or be denied treatment. *C.P.X. through S.P.X. v. Garcia*, 450 F. Supp. 3d 854, 923 (S.D. Iowa 2020). Defendants do not dispute this, but argue that it is in the public interest to stay the injunction because they are merely

complying with Minnesota Statute Section 253B.10. (ECF No. 55 at 13–14.) But a state-court judge already "committed" Doe to a state treatment facility and ordered Defendants to hold him "safe and secure" during the commitment period. (ECF No. 19 at 13.) Defendants are therefore violating a state-court order, which is surely not in the public's interest. As a result, this factor weighs against a stay and in favor of the preliminary injunction.

Because Defendants are not likely to succeed on appeal and the balance of equities and public interest weigh in favor of the preliminary injunction, the motion to stay the injunction pending appeal is denied.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Defendant's Motion to Stay Injunction Pending Appeal (ECF No. 53) is DENIED.

Dated: August 9, 2024

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge